UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL HORACEK #218347,

        Plaintiff,

v.                                   Case No. 2:13-cv-280
                                            2:15-cv-38
                               HON.  PAUL L. MALONEY

DANIEL H. HEYNS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Daniel Horacek, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of (1) the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et. seq.; (2) the Free Exercise Clause of the First Amendment; (3) the Equal Protection Clause of the Fourteenth Amendment; and (4) the Eighth Amendment. Plaintiff sues former Michigan Department of Corrections (MDOC) Director Daniel H. Heyns, former MDOC Special Activities Director Michael Martin, and former MDOC Foodservice Manager Brad Purvis.  Defendants have now moved for summary judgment.  (ECF No. 97.) Plaintiff has responded.  (ECF No. 112.)  This matter is now ready for decision.

        Plaintiff is an Orthodox Jew confined within the Michigan Department of Corrections. [1]  As an Orthodox Jew, Plaintiff alleges that he is required to eat Kosher meat and/or fish on the Sabbath, as well as all other Jewish holy days.  Plaintiff also alleges that he is

---

[1] When Plaintiff filed this complaint, he was incarcerated at Newberry Correctional Facility. Plaintiff has since been transferred to Macomb Correctional Facility.

required to eat dairy foods on the Jewish holiday of Shavout.  Plaintiff's ability to comply with his religious diet in prison is complicated by the fact that he also has a peanut allergy.

Prior to 2013, the MDOC offered a "Kosher Meal Program" that allowed Plaintiff to consume a diet that corresponded with his religious beliefs.  Plaintiff received Kosher meat and/or fish on the Sabbath and other Jewish holy days.  Similarly, Plaintiff received dairy foods on Shavout.  In addition, the policy contained an express provision that allowed Plaintiff to request a modified kosher menu due to his peanut allergy.

In 2013, the MDOC revised its policy regarding religious meals. The revisions discontinued the "Kosher Meal Program."  Pursuant to MDOC Policy Directive 05.03.150 (Effective 7/26/2013), the MDOC now only offers one religious menu—a vegan menu.  The policy states that the vegan menu complies with both Kosher and Halal religious tenants.  *Id.* ¶ PP.  The policy allows an inmate to request an alternative menu if the vegan menu does not meet the inmate's religious tenants.  *Id.*  However, the alternative menu is subject to the approval of the Deputy Director.  *Id.*  Although the new policy eliminated the provision that allowed an inmate to request a modified kosher menu due to allergies, MDOC Policy Directive 04.07.101 (effective 8/15/1994) allows inmates to request "therapeutic diets."

In addition, MDOC Policy Directive 05.03.150 (Effective 7/26/2013) contains a new provision limiting a prisoner's ability to conduct a Passover Seder.  The policy allows Jewish prisoners only at Parnall Correctional Facility (SMT) to conduct an annual Passover Seder.  *Id.* ¶ UU.  Because Plaintiff is not incarcerated at SMT, he is not allowed to participate in a Passover Seder each year.

Plaintiff further alleges that under the new MDOC policy, the vegan menu sometimes contains peanut butter.  Thus, Plaintiff cannot eat these meals due to his peanut

allergy.  Defendants state that a dietician has determined that Plaintiff's peanut allergy is accommodated by providing Plaintiff with a "snack bag" on days when peanut butter is served. Although Plaintiff concedes that he received a "snack bag" for a few months in 2014, Plaintiff states that he has not received a "snack bag" since January 2015.

While this case was pending, MDOC Policy Directive 05.03.150 (effective 1/22/2015) superseded MDOC Policy Directive 05.03.150 (Effective 7/26/2013).  However, the current policy directive contains the same provisions at issue in this case—the vegan menu is still the only religious menu offered, and SMT is the only facility that allows an annual Passover Seder.  *Id.* ¶¶ OO, TT.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there

is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Before reaching the merits of Plaintiff's claims, it is important to clear up some confusion regarding who Plaintiff is suing and the relief Plaintiff is seeking.  Plaintiff is suing all three Defendants in both their individual capacities and their official capacities.  Plaintiff seeks declaratory relief, injunctive relief, and costs and fees related to prosecuting this suit.  PageID.14-15.  Notably, Plaintiff is seeking prospective equitable relief.

Plaintiff's claims against Defendants in their individual capacities should be dismissed because those claims are now moot.  Article III of the United States Constitution limits federal courts to the adjudication of actual, ongoing cases and controversies.  *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988).  "To satisfy the case or controversy requirement, an actual controversy must exist at all stages of review, and not simply on the date the action is initiated." *Rettig v. Kent City School Dist.*, 788 F.2d 328, 330 (6th Cir. 1986).  A case will become moot when the requested relief is granted or no live controversy remains.  *Deakins*, 484 U.S. at 199.

In this case, when Plaintiff filed his complaint, all three Defendants were employed at the MDOC—Daniel H. Heyns was the Director, Michael Martin was the Special Activities Director, and Brad Purvis was the Foodservice Manager.  All three Defendants no longer hold these positions.  PageID.544.  Because Defendants no longer hold these positions, Plaintiff's claims for declaratory and injunctive relief against Defendants in their individual capacities are now moot.  *See Moncier v. Jones*, 557 F. App'x 407, 410 (6th Cir. 2014)

(dismissing the plaintiff's claim for injunctive and declaratory relief against an official in her individual capacity because the claims were moot due to the fact that she no longer held that position).

Although Plaintiff's claims against Defendants in their individual capacities are moot, Plaintiff's claims against Defendants in their official capacities are not moot. Fed. R. Civ. P. 25(d)(1) provides:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

In other words, when defendants sued in their official capacities leave their positions, their successors automatically assume their roles in the litigation.  Applying the rule to this case, the current MDOC Director, Special Activities Coordinator, and Foodservice Manager automatically became parties to this action when the currently named defendants ceased holding their positions within the MDOC.  The fact that all three Defendants in this case are no longer employed at the MDOC has no effect on Plaintiff's official capacity claims.

As to the merits of Plaintiff's claims, Plaintiff alleges that the current MDOC policy violates his religious rights under RLUIPA and the First Amendment because (1) he is not provided Kosher meat and/or fish on the Sabbath as well as other Jewish holy days; and (2) not provided dairy food on Shavout.  Defendants argue that Plaintiff's RLUIPA claims should be dismissed because RLUIPA does not apply to the Food Service Program; Plaintiff cannot recover money damages; and Plaintiff's request for injunctive relief is now moot.  Moreover, Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment claim.

The RLUIPA statute provides, in pertinent part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act applies when "the substantial burden is imposed in a program or activity that receives Federal financial assistance."  42 U.S.C. § 2000cc-1(b).  The terms program or activity include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government."  42 U.S.C. § 2000cc-5(6); 42 U.S.C. § 2000d-4a(1)-(2).

Defendants first argue that Plaintiff's RLUIPA claims should be dismissed because RLUIPA does not apply to the Food Service Program.  Defendants do not dispute that the MDOC is a department of the State of Michigan that receives some Federal financial assistance.  *See Kaufman v. Carter*, 952 F. Supp. 520, 527 (W.D. Mich. 1996) ("It is not disputed that the Michigan Department of Corrections receives federal financial assistance.").  However, Defendants contend that the Food Service Program neither receives nor is eligible to receive any federal funding.  In the opinion of the undersigned, the fact that the MDOC receives federal funding is the relevant inquiry.  The MDOC developed the policy that the vegan menu is the only religious menu offered in the MDOC prisons.  It is this policy that creates a substantial burden on Plaintiff's religion.  The policy makes no mention of the Food Service Program.  In addition, this broad interpretation is consistent with the rules of construction set forth in RLUIPA, which states: "This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by

the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc–3(g).  Finally, Defendants have not cited any cases to support the argument that a state department of corrections can fall outside the scope of RLUIPA simply by not providing funds to a specific "program" within the department of corrections.

Defendants next argue that Plaintiff's RLUIPA claim should be dismissed because Plaintiff cannot recover money damages under RLUIPA and that Plaintiff's request for injunctive relief is now moot.  In *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), the Supreme Court held that a RLUIPA claim does not permit money damages against an official when sued in his official capacity because RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. However, in this case, Plaintiff is not requesting any monetary damages that would be barred by the Eleventh Amendment.  Instead, Plaintiff is requesting declaratory relief, injunctive relief, and costs and fees relating to prosecuting the suit.

In addition, the Eleventh Amendment permits suits against state officials in their official capacities for prospective injunctive relief.  *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (applying *Ex Parte Young*).  Therefore, Plaintiff's requested relief is not barred by the Eleventh Amendment.  *See Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002) ("The holding in *Ex Parte Young* applies only to prospective non-monetary relief such as injunctions."); *Uttilla v. Tennessee Highway Dep't*, 208 F.3d 216 (6th Cir. 2000) (unpublished) ("[I]t is well settled that an award of attorney's fees ancillary to prospective relief is not barred by Eleventh Amendment immunity.").  Furthermore, as discussed above, Plaintiff's claims against Defendants in their official capacities are not moot because the officials currently holding their positions are now the parties in this case.

Defendants next argue that Plaintiff's RLUIPA and First Amendment claims should be dismissed because Defendants are entitled to qualified immunity.  However, it is well-established that defendants sued in their official capacities cannot invoke the doctrine of qualified immunity.  *See Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003) (finding defendants sued in official capacities cannot invoke personal immunities such as qualified immunity).  Because the claims against Defendants in their official capacities are Plaintiff's only remaining claims, Defendants cannot invoke qualified immunity.  Nonetheless, Defendants may still be entitled to summary judgment if they can show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); s*ee also Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

In addition, Congress enacted RLUIPA, in part, to expand the protections afforded to a person's religious beliefs.  *See Holt v. Hobbs*, 135 S.Ct. 853, 859 (2015) ("Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq., "in order to provide very broad protection for religious liberty." (quoting *Burwell*

*v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751, 2760 (2014)).  As stated above, RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

Although RLUIPA does not define "substantial burden," courts apply the traditional substantial burden test, as defined by the Supreme Court's free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (citations omitted).  A "substantial burden" requires something more than an incidental effect on religious exercise.  *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226-27 (11th Cir. 2004) (a substantial burden must place more than an inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (substantial burden is "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

Defendants argue that Plaintiff is not substantially burdened by the current MDOC policy.  As Defendants point out, six Jewish prisoners previously challenged this policy in *McKenzie v. Michigan Dep't of Corr.*, No. 2:13-CV-291, 2013 WL 5963115 (W.D. Mich. Nov. 8, 2013).  In that case, the plaintiffs' complaint cited several bible passages to support the fact that their religious diet mandates that they eat Kosher meat:

> All meat must come from animals with a split hoof and who chew its cud such a[sic] deer, cow, sheep or goat. Fish must have had fins and scales. All dairy products must be derived from "kosher" animals. Preparation can render an otherwise "kosher" meal non-kosher if strict guidelines are not followed.
>
> They explained that they must follow all of God's laws including God's dietary laws otherwise they could not be God's chosen one. [See, Deuteronomy 14 and Levitious [sic] 11:44]. In short, they entered into a personal covenant with God as in the days of Noah, in effect a contract, that they must eat meat and dairy in accordance with God's dietary laws. [See, Genesis 9:1–17; Deuteronomy 4:3–5].

*Id.* at *4. Ultimately, the court dismissed the plaintiffs' First Amendment and RLUIPA claims because the vegan diet did not place a substantial burden on their ability to practice the tenets of the Jewish faith. *Id.* The court reasoned that the bible passages that the plaintiffs cited did not state that the consumption of dairy and meat was required by the plaintiffs' religion. *Id.*

However, in this case, Plaintiff has cited several additional passages from the Shulhan Arukh, also known as the "The Code of Jewish Law," and the Torah. Plaintiff states:

> That pursuant to the Shulhan Arukh ("The Code of Jewish Law") and the Torah, it is my sincerely held religious belief that as a Jew, I am mandated to eat meat and fish during all Sabbaths and Jewish Holy Days, as well as being mandated to eat dairy during the Jewish Holy Days of Shavout. See, Shulhan Arukh (Code of Jewish Law), Chapters 44, paragraph 4 (". . . and a custom in Israel is as valid as law."); Chapter 72, paragraph 1 ". . . The Sabbath is equal in importance to all the other commandments . . . Observing the Sabbath properly is equivalent to observing the whole Torah . . . The desecration of the Sabbath, is like denying the whole Torah."); Chapter 72, Paragraph 3 (". . . He who observes the Sabbath according to all its laws, honoring it to his utmost ability, is rewarded in this world, besides the great reward in store for him in the world to come."); Chapter 72, paragraph 7 ("We should procure meat, fish, dainties, and good wine for the Sabbath, in accordance with our means. It is proper to eat fish at every Sabbath meal."); Chapter 103, paragraph 7 ("*It is customary to eat dairy food on the first day of Shavout . . . it is also necessary to partake of meat, the eating of meat being mandatory on every holiday.*"); Chapter 119, paragraph 1 ("(Exodus 12:8): "And they shall eat the

> meat on this night."""; Chapter 129, paragraph 9 ("[Rosh Hashana]
> "At the evening meal . . . procure for the occasion, fish . . . also
> meat and confectionaries should be partaken of."), Torah, Exodus
> 12:8 ("A*nd they shall eat the meat on this night [Passover]*).

PageID.617 (Mistakes in original and emphasis added).  In the opinion of the undersigned, a

reasonable trier of fact could determine that providing only a vegan menu creates a substantial

burden on Plaintiff's religious beliefs.  Unlike the plaintiffs in *McKenzie*, Plaintiff has cited to

passages in the Shulhan Arukh and the Torah to show that the eating of meat is mandatory on

Jewish holy days.

Defendants also cite several additional cases to support their argument that

prisoners do not have the right to obtain meat based on a religious belief.  For example, in *Spight*

*v. Davidson*, 2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014), the plaintiff complained that

the prison chaplain was forcing him to eat a vegetarian diet and not providing him with Kosher

meat.  In dismissing the plaintiff's claims, the court stated: "[A]s long as the inmate is provided

with food that does not violate his religious convictions, and the diet 'is sufficient to sustain the

prisoner in good health, no constitutional right has been violated.'"  *Id.* at *2 (quoting *Colvin v.*

*Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)).  The court found that "[w]hile the plaintiff may want

to have kosher meat entrees rather than beans and vegetarian entrees, his food choices, as a

prisoner, are limited."  *Id.*  Similarly, Defendants cite several other cases where the courts found

that not providing Muslim prisoners with Halal meat is not a substantial burden on their religious

beliefs because a vegetarian diet complies with Halal.  *See Robinson v. Jackson*, 615 F. App'x 310,

314 (6th Cir. 2015); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008); *Hudson*

*v. Caruso*, 748 F. Supp. 2d 721, 729 (W.D. Mich. 2010).

However, the facts in the cases that Defendants cite are distinguishable from the

facts in this case.  In the cases Defendants cite, the plaintiffs simply requested Kosher/Halal meat,

but the plaintiffs did not argue that their religious beliefs were violated by not eating the meat on specific days. Moreover, the courts in those cases found that the diets in question did not violate Kosher or Halal rules. In this case, Plaintiff is complaining that his religion requires him to eat certain foods on the Sabbath and other Jewish holy days. Thus, the failure to provide these specific foods on the Sabbath and other Jewish holy days forces Plaintiff to violate his religious beliefs. Therefore, in the opinion of the undersigned, a reasonable trier of fact could determine that providing only a vegan menu creates a substantial burden on Plaintiff's religious beliefs

Next, as it relates to the First Amendment claim, the inquiry shifts to whether the policy is "reasonably related to legitimate penological interests." *Flagner v. Wilkinson,* 241 F.3d 475, 483 (6th Cir. 2001) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Id.* at 484 (citing *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *See Turner*, 482 U.S. at 89-90 ("[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly,"

but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 91).

Here, Defendants assert that a valid, rational connection exists between the prison regulation and the legitimate governmental interest because the MDOC does not have the physical space or the budgetary means to maintain separate kitchens for each religious group. Although cost is a legitimate governmental interest, Defendants do not fully develop this argument. Prior to 2013, the MDOC offered three meals—kosher meal, vegan meal, and the non-religious meal. After Muslim prisoner's filed a lawsuit requesting a Halal diet, the MDOC determined that the vegan meal could incorporate both Kosher and Halal. Thus, the MDOC had sufficient funding for a Kosher diet in the past. Furthermore, Plaintiff's request likely will cost less than the previous Kosher menu because Kosher meat and/or fish does not have to be served every day. Instead, Plaintiff has limited his request to the Sabbaths and other Jewish holy days.

As to the remaining three factors, Defendants argue that Plaintiff has several alternative ways that he can exercise his religious beliefs such as attending group religious services and possessing religious materials. While Plaintiff is not entitled to every means of expression

and free exercise, Defendants' argument improperly suggests that because Plaintiff has some ability to practice his religion that all constitutional safeguards are satisfied.

Defendants also argue that if Plaintiff is provided with meat, then all Jewish inmates would have to be provided with meat, and then all Muslim prisoners would have to be provided with meat.  However, Defendants' argument is not necessarily true. Plaintiff is an Orthodox Jew. As an Orthodox Jew, Plaintiff alleges that he is required to eat certain foods on the Sabbath and holy days.  The failure to eat these foods on these specific days would violate his Orthodox Jewish beliefs.  However, it does not necessarily follow that non-Orthodox Jews would violate their religious beliefs if they do not eat meat on the Sabbath or other Jewish holy days.  Similarly, Defendants cited several cases where the courts have already found that Muslims do not need to be provided with Halal meat because the failure to do so does not violate their religious beliefs.

Finally, Defendants argue that the vegan meal is the alternative that fully accommodates the prisoner's rights at *de minimis* cost.  This argument fails to recognize that Plaintiff is asserting that the vegan meal violates his religious beliefs because he is required to eat meat and/or fish on the Sabbath and other Jewish holy days. Thus, the vegan meal is not an alternative that fully accommodates Plaintiff's rights.

Based on these reasons, in the opinion of the undersigned, a question of fact remains as to whether the MDOC policy is reasonably related to a legitimate penological interest under the First Amendment.  Because Defendants have not shown that the MDOC policy is reasonably related to a legitimate penological interest under the First Amendment, the undersigned does not need to analyze whether the MDOC policy meets the more stringent "least restrictive" test under RLUIPA.[2]  *See Hayes v. Tennessee*, 424 F. App'x 546, 555 (6th Cir. 2011) (". . . RLUIPA employs

---

[2] It should be noted that Defendants do not argue that the current policy is the least restrictive means.

a less deferential standard—the least restrictive means of furthering a compelling governmental interest—than the standard applied to religious exercise First Amendment claims, a uniform rule having a reasonable relation to legitimate penological interests."). Therefore, in the opinion of the undersigned, Defendants have not met their burden to show that they are entitled to judgement as a matter of law, and Defendants' motion for summary judgment on Plaintiff's RLUIPA and First Amendment claims should be denied.

Next, Plaintiff asserts an equal protection claim against Defendants. Plaintiff alleges that the MDOC policy, which allows Jewish prisoners at Parnall Correctional Facility to conduct a Passover Seder but does not allow Jewish prisoners at any other facility to have a Passover Seder, violates his right to equal protection. The provision states:

> Pursuant to court order, an annual Passover Seder shall only be conducted at the Parnall Correctional Facility (SMT) under the direction of the CFA Special Activities Coordinator. Only prisoners who designated Judaism as their religious affiliation shall be permitted to attend the Seder. The Warden shall determine necessary custody supervision, consistent with requirements set forth in this policy.

MDOC Policy Directive 05.03.150 (Effective 01/22/2015) at ¶ TT.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, the government is prohibited from engaging in discrimination that: (1) burdens a fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny"

standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). When neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Midkiff v. Adams Cty.*, 409 F.3d 758, 770 (6th Cir. 2005).

Here, Defendants broadly state that the equal protection claim should be dismissed because Plaintiff has not alleged that he was treated differently than a similarly situated person based on his membership in a protected class. Plaintiff states that the MDOC policy discriminates against him based on his membership in a protected class—being Jewish. [3] In the opinion of the undersigned, the strict scrutiny standard applies to Plaintiff's equal protection claim because the MDOC policy adversely affects Jewish inmates, which is a protected class. In addition, Defendants offer no reasoning behind the policy. The policy itself states that it is "[p]ursuant to a court order," but Defendants failed to mention anything regarding this court order. Therefore, in the opinion of the undersigned, Defendants have not shown that the MDOC policy is suitably tailored to serve a compelling state interest.

Defendants also argue that the equal protection claim should be dismissed because Defendants lack personal involvement. Here, Plaintiff is challenging the MDOC Policy. The MDOC Director has the authority to sign policy directives. *See* MDOC Policy Directive 01.04.110 (effective 8/1/2013) at ¶ C. Moreover, the CFA Special Activities Coordinator is specifically mentioned in the policy as overseeing the Passover Seder. MDOC Policy Directive 05.03.150 (Effective 01/22/2015) at ¶ TT. Therefore, in the opinion of the undersigned, a question of fact exists to Defendants' personal involvement, and Defendants are not entitled to judgment as a matter of law on Plaintiff's equal protection claim.

---

[3] It should also be noted that Plaintiff does not argue that the policy interferes with a fundamental right—the right to free exercise of religion.

Plaintiff's final claim is an Eighth Amendment claim.  Plaintiff alleges that the current MDOC Policy violates his Eighth Amendment rights because the policy does not allow Plaintiff to eat the religious menu and also receive special accommodations for his peanut allergy. Because the religious menu cannot accommodate his peanut allergy, Plaintiff alleges that he is not receiving an adequate nutritional diet.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food."  *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  However, the deprivation of a few meals generally does not rise to the level of an Eighth Amendment violation.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Despite Plaintiff's contentions, the current MDOC policy does provide an avenue for Plaintiff to receive the only religious menu that is offered at MDOC, as well as additional accommodations for his peanut allergy.  It is true that the previous Kosher Meal Program explicitly stated that a Bureau of Health Care Services dietician may modify the Kosher menu to provide for medical diets.  PageID.38.  It is also true that the current policy does not contain this provision.  However, MDOC Policy Directive 04.07.101 allows Plaintiff to request a "therapeutic diet," which would address his peanut allergy.[4]

Furthermore, Plaintiff fails to allege any actual injury caused by the MDOC Policy.  The record shows that Plaintiff received alternative food on at least some of the days that peanut butter was served.  Defendants state that on days when peanut butter is served, Plaintiff receives a "snack bag."  Defendants further state that a dietician has determined that these "snack bags" are a reasonable accommodation to Plaintiff's diet.  On the other hand, Plaintiff contends that he only received a "snack bag" for a couple of months and that he is no longer receiving any "snack bags."  Even assuming Plaintiff no longer receives the snack bags, Plaintiff does not explain how many of his meals contain peanut butter and whether he can eat a portion of these meals.  Instead, Plaintiff broadly asserts that the MDOC policy caused him to "suffer[] a number of medical emergencies,"  but never explains the "medical emergencies" in any detail.  PageID.448.  Therefore, in the opinion of the undersigned, Plaintiff's Eighth Amendment claim should be dismissed.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 97) be granted in part and denied in part.  All of Plaintiff's claims against Defendants in

---

[4] It should be noted that on Step I Grievance NCF14-03-225-9D, the Investigation Information states: "Per MDOC diet manual, allergy diets are not provided."  PageID.560.  However, MDOC Policy Directive 04.07.101 provides for "therapeutic diets."  It is unclear what the investigator meant when he stated the "MDOC diet manual."

their individual capacities should be dismissed.  In addition, Plaintiff's Eighth Amendment claim against Defendants in their official capacities should be dismissed.  However, Plaintiff's RLUIPA, First Amendment, and Equal Protection claims against Defendants in their official capacities are not properly dismissed on summary judgment.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  December 15, 2016

 /s/Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE