UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL HORACEK #218347,                        Case No. 2:13-cv-00280

        Plaintiff,                              Hon. Paul L. Maloney
                                                U.S. District Judge

    v.

DANIEL H. HEYNS, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

On March 6, 2019, Plaintiff filed a second motion for a temporary restraining order (TRO) and a preliminary injunction. (ECF No. 198.)  Defendants filed a response (ECF No. 201) and Plaintiff replied.  (ECF No. 202.)  Plaintiff's first motion for preliminary injunctive relief was denied on February 11, 2014.  (ECF No. 29.) Plaintiff moves under Fed. R. Civ. P. 65 for a TRO and preliminary injunctive relief enjoining Defendants from denying Plaintiff's participation in a group Passover Seder on April 19 and April 20, 2019, at the Saint Louis Correctional Facility. Plaintiff is currently incarcerated at the Central Michigan Correctional Facility, in St. Louis, Michigan. [1]  Plaintiff also requests that the Court order Defendants to provide kosher meat and dairy food and allow at least a minimum number of guests to constitute a minyan under Jewish faith.

_____

[1] (http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=218347.)

## Procedural history

On September 6, 2013, Plaintiff filed this complaint against Defendants MDOC Director Daniel H. Heyns, Special Activities Director Michael Martin, and Food Service Manager Brad Purvis. Plaintiff alleged that Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act, (RLUIPA), 42 U.S.C. § 2000cc-1 (2003), the First Amendment, the Fourteenth Amendment Equal Protection Clause, and the Eighth Amendment.[2] Plaintiff complained that the universal vegan religious meal implemented by the MDOC in July of 2013, denied him meat and fish during Passover Seder and the Sabbath.[3] Plaintiff asserted that he made a request for an alternative meal on August 5, 2013, but never received a response.

On February 11, 2014, Plaintiff's first motion for a TRO and preliminary injunction was denied by U.S. District Judge R. Allan Edgar. (ECF No. 29.) Judge Edgar found that Plaintiff's First Amendment and RLUIPA claims did not have a likelihood of success on the merits. That conclusion was based on *Salaam v. Corr. Corp. of Am.*, 21 Fed. App'x 258, 260-61 (6th Cir. 2001), which held that a vegetarian diet reasonably accommodated a prisoner's religious beliefs despite the prisoner's assertion that eating fish was a fundamental tenet. Similarly, Judge Edgar

---

[2] Plaintiff asserted that his Eighth Amendment rights were violated because he was denied a religious meal that accommodated his peanut allergy. Plaintiff's Eight Amendment peanut allergy claim has been dismissed. (ECF No. 125.)

[3] Plaintiff's complaint describes events which occurred at the Newberry Correctional Facility (NCF). Plaintiff was confined at NCF at the time he filed the complaint.

concluded that "as long as a prisoner is given a meal that conforms to his religious beliefs, the prisoner does not suffer a substantial burden to his beliefs under RLUIPA." (PageID.314.) In addition, Judge Edgar concluded that Plaintiff's claims were unlikely to succeed because: (1) Plaintiff failed to show that he was denied adequate nutrition; (2) his Fourteenth Amendment due process claim failed to show a denial of a liberty or property interest; and (3) his assertion that his equal protection rights were violated because the Passover Seder was only available to inmates housed at the Parnall Correctional Facility is based upon a misreading of the MDOC policy directives. (PageID.316-318.)

On July 15, 2014, judgment was entered dismissing the complaint due to Plaintiff's failure to exhaust administrative grievance remedies. (ECF No. 53.) On May 13, 2015, the Sixth Circuit vacated the district court's judgment dismissing the case because there existed an issue of fact regarding whether Plaintiff properly exhausted his administrative grievance remedies. (ECF No. 58.) At some point prior to May 5, 2015, Plaintiff was released from prison, but by October of 2015, Plaintiff returned to prison after he was convicted of several crimes he had committed during May of 2015. (ECF No. 66 and footnote #1.)  In an opinion issued on November 5, 2015, Judge Edgar concluded that Plaintiff exhausted his administrative grievance remedies. (ECF No. 78.)

Defendants moved for summary judgment on June 1, 2016. (ECF No. 97.) Plaintiff filed a response on November 4, 2016. (ECF No. 112.) U.S. Magistrate Judge Timothy P. Greeley issued a Report and Recommendation on December 15, 2016.

(ECF No. 114.)  On March 31, 2017, this Court issued an Opinion and Order adopting the Report and Recommendation.  The Court further explained that it "reserves the right to conclude differently on certain legal matters at trial since the posture of this matter is merely a report recommending the denial of Defendants' motion for summary judgment" and hinting that "more focused briefing from the parties on certain issues prior to trial" may be necessary.  (ECF No. 125, PageID.727.)  The Court dismissed Plaintiff's Eighth Amendment claim and all claims against Defendants in their individual capacities.

The remaining claims include Plaintiff's RLUIPA, First Amendment, and Fourteenth Amendment claims against Defendants in their official capacities.  The remaining issues include: (1) Whether Plaintiff can show that the MDOC vegan meal substantially burdened his sincerely held religious beliefs to eat fish or meat on the Sabbath and during Passover Seder; (2)  Assuming that Plaintiff can show that his religious rights are substantially burdened by the vegan religious meals served at the prison, whether the MDOC can show that "they had a compelling interest achieved by the least restrictive means under . . . . RLUIPA, or that the burden was reasonably related to legitimate penological objectives under the Free Exercise Clause pursuant to the balancing test in *Turner* [*v. Safley*, 482 U.S. 78 (1987).]"; and (3) Whether Plaintiff's equal protection rights were violated because Jewish prisoners housed at the Parnall Correctional Facility are entitled to celebrate the Passover Seder.  (ECF No. 125, PageID.725.)

After a bench trial was cancelled, Plaintiff, now represented by counsel, filed a motion for summary judgment (ECF No. 188) and Defendants filed a motion for summary judgment. (ECF No. 193.)[4]  Those motions are pending and not specifically addressed in this R&R. A separate R&R will issue on those motions.

On March 6, 2018, Plaintiff filed his second request for a TRO and preliminary injunction.  The undersigned recommends that the Court deny Plaintiff's motion for injunctive relief because Plaintiff can celebrate Passover Seder with a religious meal at his prison, and Plaintiff has not shown that he made a request to an appropriate prison official for family members and friends to attend.  Moreover, Plaintiff has not shown a substantial likelihood of success on the merits of his First Amendment, RLUIPA, or Fourteenth Amendment claims necessary to support his motion for injunctive relief.  Furthermore, Plaintiff has requested relief in this motion that is different than the relief requested in his complaint.

## Facts

The Court previously explained:

[The] Passover Seder is a family and community celebration that marks 'the exodus of the Jewish people out of Egypt.' *Whitney v. Brown*, 882 F.2d 1068, 1070 (6th Cir. 1989).  Although the annual Passover Seder includes a meal and a religious service, '[s]eders do not require the presence of a Torah or a minyan.' *Id*.  A minyan is a gathering of no less than ten persons over the age of thirteen of the Jewish faith.  *Id*.

---

[4] This case was set for trial on four prior occasions.  (ECF Nos. 126, 156, 165, and 183.)  After Plaintiff filed his summary judgment motion, the February 20, 2019 trial was cancelled.  (ECF No. 192.)

(ECF No. 29, PageID.311.)   Plaintiff is provided the opportunity to celebrate the Passover Seder at his prison with a religious meal.   Plaintiff is not allowed a minyan because there are less than ten Jewish inmates at his facility.[5]   Plaintiff asserts that absent injunctive relief he will not be allowed to celebrate Passover.   Plaintiff alleges that his requests to participate in a group Passover Seder were denied.

### 1.  Kosher food

As an Orthodox Jew, Plaintiff believes that he must eat kosher meat or fish on Sabbath days and religious holidays such as the Passover Seder.   Plaintiff complains that Michigan Department of Corrections (MDOC) Policy Directive 05.03.150 (first effective July 26, 2013) changed the previous religious meal policy, which included kosher meat products, to an all vegan universal religious meal.   The newest policy makes religious meals available to more prisoners.

> OO. The Department offers a vegan menu to meet the religious dietary needs of prisoners at the following facilities: Alger Correctional Facility, Baraga Correctional Facility, Carson City Correctional Facility, Central Michigan Correctional Facility, Chippewa Correctional Facility, Earnest C. Brooks Correctional Facility, Ionia Correctional Facility, Kinross Correctional Facility, Lakeland Correctional Facility, Macomb Correctional Facility, Muskegon Correctional Facility, Newberry Correctional Facility, Oaks Correctional Facility, Parnall Correctional Facility, St. Louis Correctional Facility, Women's Huron Valley Correctional Facility. The Vegan menu shall comply with Kosher and Halal religious tenets. **A prisoner who believes the Vegan menu does not meet his/her religious dietary needs may request an**

---

[5] Plaintiff argues that he should be allowed to invite family members and friends to attend Passover Seder in the same manner that is permitted for Christian faith inmates.  As support for this assertion, Plaintiff attached exhibit A to his motion which describes Keryx weekends as a "short course" in Christianity open to all faith groups.  In this one-time-per-prisoner event, prisoners who sign-up are randomly selected to attend a weekend retreat within the facility.  The document does not state that family members and friends are invited to attend.   (PageID.1398.)

**alternative menu. An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary needs of the prisoner.** All religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 "Offender Meals." The Deputy Director or designee shall determine at which facilities religious meals will be offered.

(MDOC Policy Directive 05.03.150) (effective July 26, 2018) (emphasis added.) Defendants argue that Plaintiff can request an alternative religious meal if the vegan meal fails to satisfy his religious beliefs. Defendants also assert that Plaintiff can purchase kosher foods such as meat and dairy products from the prison store.

## 2. <u>Passover Seder</u>

Plaintiff argues that he is being treated unfairly by the MDOC because Passover Seders are only allowed at the Parnall Correctional Facility in Jackson, Michigan where he is not housed (MDOC Policy Directive 05.03.150, ¶ TT) (effective October 15, 2018), and because kosher meat is no longer served with his religious diet. The current policy provides in relevant part:

TT. Pursuant to court order, an annual Passover Seder shall only be conducted at the Parnall Correctional Facility (SMT) under the direction of the CFA Special Activities Coordinator. Only prisoners who designated Judaism as their religious affiliation shall be permitted to attend the Seder. The Warden shall determine necessary custody supervision, consistent with requirements set forth in this policy.

WW. Except in SAI, prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator and set forth in the Handbook of Religious Groups. **A prisoner or group of prisoners who wants to observe a religious fast or feast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden or designee, which shall include information regarding the religion's beliefs and practices.** The Warden or designee shall

7

refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast or feast is necessary to the practice of a bona fide religion and observance of the fast or feast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure ADDs and Wardens are notified of newly approved religious fasts or feasts.

XX. Special religious meals and food items shall be provided to prisoners only as set forth in this section. This does not apply to food items that may be sold in the prisoner store pursuant to PD 04.02.130 "Prisoner Store" or provided to prisoners as religious sacraments.

(MDOC Policy Directive 05.03.150) (effective July 26, 2018) (emphasis added.)

Defendants argue that the Sixth Circuit limited the *Whitney* decision to prisoners from the State Prison of Southern Michigan and the Parnall Correctional Facility. The issue involved a prohibition of inmate travel between the facilities in the same complex. In that case, Jewish prisoners wanted to travel to one facility for a larger Passover Seder which would include enough prisoners for a minyan. Nothing within the current prison policy limits the Passover Seder celebration or prohibits a Passover Seder celebration at any MDOC facility. Defendants argue that a prisoner may request a Passover Seder celebration. Defendants presented an affidavit from Chaplain Chad Markwell of the Central Michigan Correctional Facility. (ECF No. 194-7.) Chaplain Markwell attests that observances are available to Jewish prisoners for religious holidays including Passover. (PageID.1245.) This affidavit is consistent with the Policy Directives.

### 3. <u>Minyan</u>

Plaintiff argues that he is required to attend Passover Seder with at least 10 celebrants. Plaintiff requests that to satisfy his need for a minyan, the Court should order the MDOC to invite family members and friends to the Passover Seder celebration. Defendants argue that Plaintiff never alleged in his complaint that his constitutional rights were violated by being deprived a minyan and he should not be allowed to argue that he is entitled to injunctive relief on a claim that was never asserted in his complaint.

### Injunctive Relief Standard

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.

9

1985); *Ne. Ohio Coal.*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

## Standards for Plaintiff's claims

### 1.  <u>RLUIPA</u>

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  *Id.*  In addition, Congress enacted RLUIPA, in part, to expand the protections afforded to a person's religious beliefs. *Holt v. Hobbs*, 135 S.Ct. 853, 859 (2015) ("Congress enacted RLUIPA and its sister statute, the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq., "in order to provide very broad protection for religious liberty.") (quoting *Burwell v. Hobby Lobby Stores, Inc.,* 134 S.Ct. 2751, 2760 (2014).

The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted).  Likewise, the Supreme Court has indicated that "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Hobbs*, 135 S.Ct. at 862.  However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are *sincerely held*,' not whether 'the belief is accurate or logical.'").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007) (citations omitted); *Cutter*, 544 U.S. at 720 (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional"

11

burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014) (finding a triable issue of fact over whether RLUIPA gives the inmates a right to have access to a sweat lodge for faith-based ceremonies, and whether RLUIPA gives the inmates a right to buffalo meat and other traditional foods for a faith-based once-a-year powwow).  Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial.  *Hobbs*, 135 S. Ct. at 862.

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 F. App'x at 734.  Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *Civil Liberties for Urban Believers*, 342 F.3d at 761.

## 2.  First Amendment-free exercise

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *O'Lone v. Shabazz*, 482 U.S.

342, 348 (1987) (citations omitted). To establish a violation, Plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Prison officials may impinge on a prisoner's constitutional right to exercise First Amendment religious beliefs if their actions are "reasonably related to legitimate penological interests." *Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

> 1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

> 2. are there alternative means of exercising the right that remain open to prison inmates;

> 3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

> 4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint" *Id*. Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id*. "However, 'if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.'" *Id*. at 484 (quoting *Turner*, 482 U.S. at 91.)

**3. <u>Fourteenth Amendment-equal protection</u>**

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, the government is prohibited from engaging in discrimination that: (1) burdens a

14

fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). When neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Midkiff v. Adams Cty.*, 409 F.3d 758, 770 (6th Cir. 2005).

### Likelihood of Success on the Merits

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).

1. **Kosher food**

Plaintiff has asserted that his religious beliefs require meat or fish during Passover Seder. Whether the denial of meat and fish violates Plaintiff's rights under the First Amendment or RLUIPA is not settled.[6] Plaintiff admits that the vegan meal

---

[6] Plaintiff is a class member in a class action lawsuit pending before the Eastern District of Michigan. *Ackerman v. Washington*, No. 13-14137 (Joint Final Pretrial Order, ECF No. 181, PageID.1974.) (One of the issues for trial is whether Jewish prisoners are substantially burdened in their religious practice when they are

complies with his religious beliefs, but he desires meat and fish on the Sabbath  and during the Passover Seder celebration.  Plaintiff maintains that his sincerely held religious belief requires meat and fish on those days.  As this Court stated in denying Plaintiff's first TRO request for kosher meat or fish, the prison has a legitimate interest in avoiding tailoring each prisoner's diet to his liking or interest.  *Salaam v. Corr. Corp. of Am.*, 21 F. App'x 258, 260-61 (6th Cir. 2001) (concluding that a vegetarian diet was a reasonable accommodation and fully complied with the prisoner's religious beliefs).  As the Court noted, the vegan diet conforms to Plaintiff's religious beliefs, and if that is not the case, Plaintiff can request an alternative meal to comply with his beliefs or purchase kosher foods such as meat and dairy products at the prison store.    In addition, requests for an alternative religious meal may be made and developed with the approval of the Deputy Director.   (MDOC Policy Directive 05.03.150 ¶OO) and (ECF No. 58, PageID.451) (The Sixth Circuit stated in this case that "[d]espite being allowed an opportunity to request an alternative menu in accordance with his religious practices, Horacek sued the director of Michigan's Department of Corrections (MDOC) and several MDOC employees under 42 U.S.C. § 1983, claiming that they approved a new all-vegan menu for his religious meals…"). During the April 2019 Passover Seder, Plaintiff can receive a traditional Seder plate and other kosher food.  The meal that Plaintiff is provided complies with his beliefs. Although Plaintiff may establish that a genuine issue of material fact exists

---

forced to purchase kosher meat or dairy at the prison store.)  In that case, two similar TRO and preliminary injunction motions were denied.  (ECF No. 60, 61.)

regarding his kosher meat, fish, and dairy claims under RLUIPA, that is different standard than establishing a strong likelihood of success on the merits of his claim. Plaintiff has failed to show a strong likelihood of success on the merits on either his First Amendment or RLUIPA claims.

### 2. **Passover Seder**

Plaintiff argues that because Passover Seders are allowed only at the Parnall Correctional Facility, Plaintiff will not be allowed to attend a Passover Seder at his prison.  Plaintiff asserts that his requests to attend a group Passover Seder were denied.   Plaintiff argues that the MDOC will only have to make minimal accommodations to allow him to have a Passover Seder with kosher meat or fish and an appropriate number of guests.  Plaintiff relies on *Whitney v. Brown*, 882 F.2d 1068 (6th Cir. 1989), as authority to support his right to a Passover Seder.   Plaintiff's reliance *Whitney* as a justification for this Court to order a Passover Seder is based upon a misreading of the Sixth Circuit's opinion.   This Court previously rejected Plaintiff's argument that MDOC policy allows Passover Seders only at the Parnall Correctional Facility and not at other prisons.  The Court explained:

> Plaintiff complains that MDOC Policy Directive 05.03.150[7], ¶UU, states that only Jewish prisoners housed at Parnall Correctional Facility are allowed to participate in a Passover Seder. Because Plaintiff is housed at the Newberry Correctional Facility, he complains that he will not be allowed to participate in a Passover Seder. Plaintiff cites *Whitney v. Brown*, 882 F.2d 1086 (6th Cir. 1989) in support of his position. In *Whitney,* the Sixth Circuit held that a 1985 MDOC policy, which prohibited Jewish prisoners from traveling between complexes within the former State Prison of Southern Michigan (SPSM) in order to attend

---

[7] Citations are to the policy effective July 26, 2013. The 2018 policy is not significantly different than the 2013 policy.

weekly Sabbath services and an annual Passover Seder, violated the First Amendment. At that time, SPSM was comprised of the Southern Michigan Correctional Facility (JMF) and the Parnall Correctional Facility (SMT). *Whitney*, 882 F.2d at 1070. The *Whitney* Court, however, narrowed its holding to only those conditions of SPSM at the time of the complaint, in the mid-1980's. The *Whitney* court stated that "[t]he inmates acknowledge that plans to divide the SPSM into separate facilities one day, . . . , apparently now five or six years down the road, might raise other questions concerning inmate's intercomplex travel." *Id.* at 1075. JMF and SMT are now separate, independently managed prison facilities, quite unlike the situation in 1986.

MDOC Policy Directive 05.03.150, ¶UU, states "pursuant to court order, an annual Passover Seder shall only be conducted at the Parnall Correctional Facility." The policy refers to the court order in *Whitney*. However, the *Whitney* court only concerned Jewish prisoners at JMF and SMT. It did not concern prisoners incarcerated at NCF. Accordingly, the general policy regarding the observance of religious fasts and feasts would pertain to the prisoners housed at NCF. According to MDOC Policy Directive 05.03.150, ¶VV, "prisoners shall be permitted to observe religious fasts and feasts that are necessary to the practice of their religion, as approved by the Special Activities Coordinator and set forth in the Handbook of Religious Groups." If Plaintiff wants to participate in a Passover Seder, he should submit a written request to the warden. *See* MDOC Policy Directive 05.03.150, ¶VV. Because it does not appear that the Passover Seder is limited to SMT, it is highly unlikely that Plaintiff's claim will have a substantial likelihood of success.

(ECF No. 29, PageID.317-318) (footnote omitted.)

The current policy allows prisoners, who are not housed at Parnall Correctional Facility, to make a written request to the warden if they wish to observe a religious feast that is not provided at the facility. (MDOC Policy Directive 05.03.150 ¶WW.)  Although Plaintiff makes a general assertion that his requests to have a group Passover Seder have been denied, Defendants state that group religious services such as Passover celebrations are available to Plaintiff upon request. Plaintiff has attached copies of e-mail conversations between his counsel and

Defendants' counsel to his reply brief.  (ECF No. 202-1, PageID.1422-1426.)  On January 21, 2019, Plaintiff's counsel requested that Plaintiff be allowed to attend "a large Seder service gathering." (PageID.1426.)  Defense counsel responded the next day that the Chaplain had indicated that provisions for group religious observances, including Passover, were available upon request.  (PageID.1425.)  On January 30, 2019, Defendants' counsel informed Plaintiff's counsel that a Passover Seder would be held the first two nights at Plaintiff's facility and Plaintiff "is eligible to participate. The service will include the ceremonial Seder plate, matzo, grape juice, and Haggadah (to recount the story of Exodus)." *Id*.  Counsel asked if a minyan would be present. *Id*. Defendant's counsel responded that "[Plaintiff's] correctional facility has less than 10 Jewish prisoners, so the facility is unable to accommodate a request for a minyan.  If however, you are aware of any Jewish volunteer organizations that may be able to help, I can forward that information to MDOC." (PageID.1422.)  It is now clear that Plaintiff can participate in the Passover Seder at his facility.  Plaintiff has a low likelihood of success on the merits that his RLUIPA, First Amendment, and Fourteenth Amendment rights are being infringed based upon his Passover Seder claim because he can attend a Passover Seder at his prison.

###    3.  <u>Minyan</u>

Plaintiff asserts that he is required by his faith to have a minyan present during Passover.  However, less than ten Jewish prisoners are housed at his facility; therefore, there are not enough prisoners to celebrate the Passover Seder with a minyan. To ensure the presence of a minyan, Plaintiff has requested that the Court

order the MDOC to allow his family members and friends to attend the Passover Seder at the prison.

Contrary to the Plaintiff's assertions there is nothing in the record to support his claim that he made a request to attend a Passover Seder with his family members and friends present, and that his request was denied. The record shows that Plaintiff's counsel first made the request for Plaintiff's attendance at the Passover Seder with a religious meal and a minyan in January 2019. There is nothing in the record that establishes that Plaintiff's counsel made a request for Plaintiff's family members and friends to attend a Passover Seder at the prison. Plaintiff has not presented the Court with the name of one family member or friend who would attend a Passover Seder at the prison. Although Plaintiff asserted in his complaint that he was being denied his right to celebrate the Passover Seder, Plaintiff never asserted that he should be allowed a minyan or the opportunity to invite family members and friends to the Passover celebration in his complaint. Plaintiff has failed to show a likelihood of success on the merits of his claim that his First Amendment or RLUIPA rights were violated if his family members and friends are not invited to attend the Passover Seder in the prison.

In addition, a party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in his complaint. *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010). A motion for preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable.

20

Simply put, a plaintiff is not entitled to a preliminary injunction on claims not pending in the complaint.  *Ball v. Famiglio,* 396 F. App'x 836, 837 (3d Cir. 2010). Plaintiff did not assert in his complaint that family members and friends should be allowed to attend a Passover Seder at the prison and, therefore, he may not make such a request in a motion seeking injunctive relief.  This is especially true where Plaintiff never actually made such a request at any time prior to seeking injunctive relief.

### Remaining Factors

A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages.  *Overstreet*, 305 F.3d at 578. Plaintiff has failed to assert factors that establish that he will suffer irreparable harm in the absence of an injunction.  Plaintiff is provided the opportunity to attend the Passover Seder and have a religious diet at his place of confinement. Plaintiff has not set forth any facts showing that he will be irreparably harmed if his family members and friends do not attend the prison Passover Seder.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

## Recommendation

Therefore, it is recommended that the Court deny Plaintiff's second motion for a TRO and for a preliminary injunction. (ECF No. 198.)[8]

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  April 4, 2019                                    /s/ *Maarten Vermaat*
                                                        Maarten Vermaat
                                                        U.S. MAGISTRATE JUDGE

---

[8] Defendants argue that Plaintiff's request for injunctive relief is untimely.  On June 21, 2018, the Court extended the dispositive motion deadline to September 3, 2018.  (ECF No. 180.)  W.D. Mich. LCivR 7.2(a) defines a motion for injunctive relief as a dispositive motion.  Therefore, the Court could also deny Plaintiff's motion as untimely.